IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BRIAN BRUFFETT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV07-358-S-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| GOODING COUNTY, LT. SAM | ) | |
| GIBBS, CHAD KINGSLAND, and | ) | |
| OFFICER CORINET, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are two motions filed by Defendants. Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## INTRODUCTION

Plaintiff's claims arise from his incarceration as a pretrial detainee in the Gooding County Jail. He alleges that Deputy Kingsland intentionally beat and kicked him, and that Deputies Kingsland, Gibbs, and Cornett failed to provide him with constitutionally adequate medical care. The Court previously determined that Plaintiff could not proceed against Defendant Gooding County for lack of sufficient factual allegations in his

Amended Complaint. (Docket No. 7.) The Court also previously determined that Plaintiff had not properly exhausted his pre-hospitalization medical claims and was precluded from pursing them in this action. (Docket No. 47.)

**DEFENDANTS' MOTION TO STRIKE**

Defendants have asked the Court to strike portions of Plaintiff's Response and Exhibits to the Motion for Summary Judgment that are irrelevant, immaterial, and impertinent. (Docket No. 53.) Defendants argue that the Affidavit of Allen Robbins does not declare that the statements contained therein are true, and it is not signed under penalty of perjury, and it should be stricken as it does not meet minimum evidentiary requirements. Alternatively, Defendants argue that the Affidavit contains inadmissible evidence not based on personal knowledge. Because Plaintiff is proceeding pro se, is incarcerated, and has limited legal knowledge and resources, the Court is not inclined to strike the entire Robbins Affidavit. However, those portions of the Affidavit that are not based on personal knowledge shall be disregarded, as noted herein below.

Defendants also argue that because Plaintiff' claims arising from medical care occurring prior to his hospital stay have been dismissed for lack of exhaustion, certain records should be stricken. The Court does not find it necessary to strike the records. Some are relevant to the excessive force allegations and some are relevant to the recommendations for physical therapy. Other records that are unrelated to the claims shall be disregarded.

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A. **Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

MEMORANDUM DECISION AND ORDER  3

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in that party's favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

To prevail on a claim under 42 U.S.C. § 1983, the civil rights statute, a plaintiff

MEMORANDUM DECISION AND ORDER  4

must show that a violation of his rights protected by the Constitution or created by federal statute occurred, and that it was proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**B.    Facts and Allegations**

The following are undisputed facts or factual allegations of Plaintiff that are material to the claims at issue here. Prior to his conviction, Plaintiff was housed at the Gooding County Jail as a pretrial detainee. At that time, Shaun Gough[1] was the Sheriff of Gooding County; Chad Kingsland, Gerlyn Walker-Gibbs, and Kelby Cornett were employed as Sheriff's Deputies.

Plaintiff was treated in the Gooding County Memorial Hospital Emergency Room and hospitalized at St. Alphonsus Hospital in Boise, Idaho from January 19, 2006, through January 31, 2006. St. Alphonsus Hospital records indicate that it was reported that Plaintiff was not feeling well on January 18 and refused his dinner and was found on the floor unresponsive several hours later, and that he had apparently fallen, hitting his left flank on the bunk.[2] (Exhibits to Plaintiff's Response, p. 25, Docket No. 51-3.)

Plaintiff previously had been diagnosed with "bipolar disorder and schizoaffective disorder, . . . mental status changes, [and] hallucinations." (*Id*., p. 30.) As a result, he had been "sent from the Gooding jail to the Blackfoot mental institution, where he was

---

[1] Sheriff Gough is not a defendant in this action.

[2] This information is included to note what was reported to the hospital staff, and not for the truth of the matter that was reported. Plaintiff alleges that jail staff lied when they reported this set of events.

MEMORANDUM DECISION AND ORDER  5

initiated on multiple psychiatric medications. . . believed to [be] lithium, fluoxetine, Depakote, and Seroquel." (Response Exhibits, p. 31, Docket No. 51-3.) During Plaintiff's emergency room visit on January 19, 2006, he was diagnosed with having had "an overdose on lithium and Depakote and possibly Seroquel." *Id*.

Plaintiff's hospital "Discharge Summary" stated: "He is to use a walker when ambulating. He is to get physical therapy for ambulation. He is to follow up with the facility medical personnel for his medical care." (Response Exhibits, p. 32, Docket No. 51-3.)

Hospital "Progress Notes" of 1/30/06 state:

> Patient still has [reduced] balance and is high fall risk with/without walker. S/p Lieutenant Sam Gibbs about assist [sic] they can provide patient in jail and she stated patient can use walker and they will provide assist as patient needs to ensure safety. They can also follow through with exercise protocol and gait [illegible] goals given by PT. Will order walker and set exercise and gait goals for patient.

(Exhibits to Plaintiff's Response, p. 33, Docket No. 51-3.) The "Interagency Patient Transfer Form" of 1/31/06 states: "Use walker"; "Patient is at risk for falls"; and "PT to evaluate and treat for ambulation." (Exhibit to Affidavit of Michael Kane, p. 27, Docket No. 49-8.)

On January 31, 2006, Plaintiff was returned to the jail. On February 1, 2006, Plaintiff filed a written request – commonly referred to as a "kite" – to talk with a doctor. On the same day, Deputy Quigley[3] responded that a doctor was scheduled to review

---

[3] Deputy Quigley is not a defendant in this action.

MEMORANDUM DECISION AND ORDER 6

Plaintiff's paperwork that day. (Exhibit A to Gough Affidavit, Docket No. 49-7.)

On or about February 25, 2006, Plaintiff filed a kite to see a "psych" and "med" doctor. On February 26, 2006, Defendant Deputy Kingsland placed Plaintiff on the list to see the doctor. (*Id.*)

On April 23, 2006, Plaintiff filed a kite to see a doctor for his left shoulder and arm, which was approved on the same day by Deputy Kimball. On April 26, 2006, Plaintiff saw the doctor. (*Id.*)

On June 20, 2006, Plaintiff filed a kite to see the doctor for his right shoulder. He was put on the list to see the doctor by Deputy Green,[4] and Plaintiff actually saw the doctor two days later, on June 22, 2006. (*Id.*)

On July 11, 2006, Plaintiff submitted a written grievance that stated he was "told by jail doctors that [he] would not get help or rehab in jail." (Exhibit to First Affidavit of Sheriff Gough (supporting prior Motion to Dismiss), p. 2, Docket No. 24-1.) A staff note across the top of the form says "Sentencing 7/27/06, 0900." (Docket No. 51-3, p. 57.) Prior to this date, there had been no kites from Plaintiff specifically requesting physical therapy or rehabilitation.

On July 26, 2006, Plaintiff filed a kite to see a doctor for his right arm. Plaintiff was placed on the schedule to see the doctor that same day by Deputy Thompson.[5] On July 27, 2006, Plaintiff saw the doctor, who stated that Plaintiff should have an

---

[4] Deputy Green is not a defendant in this action.

[5] Deputy Thompson is not a defendant in this action.

MEMORANDUM DECISION AND ORDER 7

orthopedic consult as soon as possible for his shoulder. (*Id*.) On an unknown date, Plaintiff submitted a kite to "go for an x-ray prior to 8-18-06." (*Id*.) This was not acted upon, but on August 10, 2006, Plaintiff was sentenced and transferred into the custody of the Idaho Department of Correction (IDOC). After arriving at IDOC, Plaintiff had his cellmate write a letter to the Idaho Attorney General alleging that while Plaintiff was housed at the jail, he was beaten and his kidney was injured, and that he received inadequate medical care. (*Id*.)

As a result of Plaintiff's contact with the Attorney General's Office, Jay Heward, of the Cassia County Sheriff's Office, conducted an independent investigation of the allegations about Gooding County Jail staff. (Affidavit of Jay Heward & Exhibit A, Docket No. 49-6.) Heward declares that during Plaintiff's interview, Plaintiff used a pencil to cross out the portion of his letter to the Attorney General stating that Defendant Kingsland beat him. Plaintiff said he did not know if Defendant Kingsland beat him or not but that other inmates told him it happened, and so he believed them. Plaintiff told Heward he did not want Defendant Kingsland to get into trouble if the beating did not happen. Plaintiff said he would trust whatever Chris Fay, Plaintiff's cellmate at the time of the incident, said. On September 13, 2007, Heward conducted a telephone interview with Chris Fay, wherein Fay could not corroborate Plaintiff's allegations that Defendant Kingsland had beaten Plaintiff. (*Id*.)

C.  **Excessive Force Claim**

   1.   Standard of Law

A pretrial detainee is protected from excessive force by the Fourteenth Amendment, but the more particular Fourth Amendment provides the proper standard for assessing an excessive force claim. *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1197 (9th Cir. 2002). In *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989), the Court stated that an analysis of an excessive force claim "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." 490 U.S. at 396. Mental illness "is a factor that must be considered in determining, under *Graham*, the reasonableness of the force employed." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) (internal citation omitted).

   2.   Discussion

Here, Plaintiff is contending that Deputy Kingsland beat and kicked him without provocation or reason. On summary judgment, Plaintiff may not stand on the allegations in the Complaint, but must come forward with admissible evidence supporting the elements of his claims. Plaintiff's allegations are that in January 2006, Defendant Deputy Kingsland removed Plaintiff's cellmate from their cell, handcuffed Plaintiff, put him against the wall, and began to hit him in the back. Plaintiff further alleges that Kingsland kicked him when he was on the floor, and made several threatening statements to Plaintiff. Plaintiff also alleges that after three days of worsening health, he blacked out

MEMORANDUM DECISION AND ORDER 9

and was taken to the hospital. (Amended Complaint, Docket No. 6-1.)

Defendants assert that Plaintiff was not beaten by Deputy Kingsland, but that due to other medical problems and medication issues, Plaintiff blacked out and fell, hitting his left flank on the bunk. (Exhibits to Plaintiff's Response, p. 25, Docket No. 51-3.) By Affidavit, Investigator Jay Heward offers an admission that Plaintiff stated he did not know whether he was beaten or not. By Affidavit, Defendant Kingsland denies having beaten Plaintiff. (Affidavit of Chad Kingsland, Docket No. 49-5.)

With the evidence submitted in support of their Motion for Summary Judgment, Defendants have met their initial burden of proving the absence of evidence to support Plaintiff's claim that he was beaten by Defendant Kingsland. The burden thus shifts to Plaintiff to bring forward evidence supporting his claim.

Plaintiff alleges that his medical records show that he had bruises to his kidney area, and this proves that Defendant Kingsland beat him. One medical record describing an examination of Plaintiff at St. Alphonsus shows: "Skin: No visible rashes, but he does have left flank ecchymoses [purple discoloration of the skin] given history of prior fall." (Plaintiff's Response, p. 10, Docket No. 51-3.) Another medical record states: "Left Flank Hematoma Secondary to Fall Against Bunk at Jail." (*Id*., p. 18.) There is no indication in the record that Plaintiff had injuries that medical personnel thought were intentionally inflicted upon him. Any number of inferences could be drawn from this circumstantial evidence. Plaintiff's suggested inference is not unreasonable by itself and therefore it must be construed in Plaintiff's favor in the summary judgment context;

MEMORANDUM DECISION AND ORDER  10

however, the inference cannot be viewed in isolation, but must be viewed in the context of all of the facts in the record.

Plaintiff has also provided the Affidavit of Allen Robbins. (Docket No. 51-3, pp. 28-20.) Mr. Robbins states: "I observed the officers keeping Mr. Bruffet from Officer Kingsland on numerous occasions." This is slight circumstantial evidence that Officer Kingsland and Mr. Bruffet had some sort of difficulties between them; however, the time frame, the instigator of the difficulties, and the context are unknown. Mr. Robbins' statement that "I heard from other inmates and staff that Officer Kingsland assaulted Mr. Bruffet" is inadmissible hearsay and cannot be considered.[6]

To overcome a motion for summary judgment, the nonmoving party "must come forward with more persuasive evidence that would otherwise be necessary when the factual context makes the non-moving party's claim implausible." *British Motor Car Distributors, Ltd v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989). Here, the medical records clearly show that the black out resulted from the prescription overdose; in light of that, Plaintiff's story is implausible that the injuries did not occur from the fall but rather from an unrelated beating several days earlier that Plaintiff had no memory of until he filed his very-detailed Complaint. A party may not contradict himself to create a question of fact. *See Kennedy v. Allied Mutual*, 952 F.2d

---

[6] In his Response (Docket No. 39), Plaintiff alleges that perhaps Deputies Hawkins and Thompson should be brought to Court to testify about the incidents. However, Plaintiff has had adequate opportunity to determine during discovery whether these deputies have any personal knowledge regarding Plaintiff's claims.

MEMORANDUM DECISION AND ORDER  11

262, 266 (9th Cir. 1991). Plaintiff has not explained how he came to know the details of the beating. He has provided no eyewitness accounts, and the investigator performed an extensive investigation but was unable to find any corroborating witnesses.

The Court concludes that, in the context of the other evidence, Plaintiff's evidence of bruising and Mr. Robbins' vague statement that officers kept Plaintiff and Officer Kingsland apart are not sufficient evidence whereupon a factfinder could find in Plaintiff's favor on his excessive force claim. As a result, Defendant Chad Kingsland is entitled to summary judgment on this claim. Accordingly, Plaintiff's claim against Kingsland will be dismissed.

**D.     Lack of Medical Care Claim**

    1.     Standard of Law

A convicted inmate's challenge to the conditions of his confinement is properly brought under the Eighth Amendment, and a pretrial detainee's challenge is properly brought under the Fourteenth Amendment. *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir.) (en banc), *cert. denied*, 502 U.S. 1074 (1991). Regardless, the Eighth Amendment provides a minimum standard of care for determining a person's right as a pretrial detainee. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).

To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme

MEMORANDUM DECISION AND ORDER  12

Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been

MEMORANDUM DECISION AND ORDER  13

"consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

On the one hand, "prison officials are entitled to rely on the opinions, judgment, and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for an inmate." *Wynn v. Mundo*, 367 F.Supp. 2d 832, 337-38 (D. N.C. 2005). On the other hand, if an inmate continues to complain after he has had a medical examination, officers who ignore the continuing complaints may be deliberately indifferent. *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987).

2. Discussion

The Court concludes that there is insufficient evidence before the Court to determine whether Defendants are entitled to summary judgment on the medical claims. Therefore, the Court will currently deny the motion for summary judgment without prejudice on this claim, and permit Defendant to supplement the record and move anew for summary judgment (without refiling the previous motion and supporting documents) within 30 days of this Order, if the facts support such a filing at that time. If Defendants do so, Plaintiff shall supplement the record with admissible evidence setting forth whether or how the failure to provide rehabilitative care harmed or injured him, including any medical opinion to support the allegation of harm.

Each Defendant has declared statements to the effect that "I interacted with

Plaintiff quite often while he was detained at the GCCJ, and as shown by the incident reports I never received any written or verbal grievances from Plaintiff complaining of his grievances being ignored or not answered to his satisfaction." (First Affidavit of Kingsland, para. 4, Docket No. 23-4.) However, in light of the foregoing statements which seem to indicate that deputy sheriffs, including Defendants, had responsibility to respond to grievances, there is no response in the record to Plaintiff's grievance of July 11, 2006 (he was "told by jail doctors that [he] would not get help or rehab in jail.") (Exhibit to First Affidavit of Sheriff Gough (supporting prior Motion to Dismiss), p. 2, Docket No. 24-1.) It is unclear whether any Defendant had responsibility and failed to respond to the grievance, and, if so, the reason for the failure.

On February 1, 2006, Plaintiff filed a kite to talk with a doctor. On the same day, Deputy Quigley (not a defendant) responded that a doctor was scheduled to review Plaintiff's paperwork that day. (Exhibit A to Gough Affidavit, Docket No. 49-7.) It is unclear if a doctor reviewed Plaintiff's paperwork, and when Plaintiff saw a doctor based on that request. It is unclear whether Defendants had any responsibility to see that Plaintiff received medical care after this request.

The post-operative notes suggest that Defendant Gibbs may have had some responsibility in the area of scheduling outside appointments. The hospital discharge records indicate that a physical therapist appointment to set exercise and gait goals for Plaintiff would be appropriate. The records indicate that Defendant Gibbs apparently informed hospital personnel that Plaintiff would be provided with an exercise and

MEMORANDUM DECISION AND ORDER  15

ambulation program to satisfy the physical therapy recommendation. It is unclear whether Defendant Gibbs or any other Defendant had responsibility for scheduling outside care and whether they failed to do so, and, if so, the reason for the failure.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 49) is GRANTED on the excessive force claim asserted against Defendant Kingsland, and it is DENIED without prejudice on the medical claims against Defendants Kingsland, Cornett and Gibbs.

IT IS FURTHER HEREBY ORDERED that Defendants may renew their Motion for Summary Judgment within the next (30) days by filing a supplement to the materials already provided to the court. If they do so, Plaintiff shall file a supplement to the materials he has filed with the court, indicating how he was harm or injured by the delay in the provision of rehabilitative care. Such supplementation shall be supported by admissible evidence, such as a detailed affidavit and/or medical records.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Strike (Docket No. 53) is DENIED.

DATED: **February 20, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

MEMORANDUM DECISION AND ORDER 16