UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN BRUFFETT,<br><br>                Plaintiff,<br><br>v.<br><br>GOODING COUNTY, LT. SAM GIBBS, CHAD KINGSLAND, and OFFICER CORINET,[1]<br><br>                Defendants. | Case No. 1:07-CV-358-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Previously in this case, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. Defendants were permitted to renew their Motion for Summary Judgment, and Plaintiff was given an opportunity to provide supplemental facts in opposition. (Dkt. 54.) Subsequently, Defendants filed a second Motion for Summary Judgment (Dkt. 55); the Idaho Department of Correction (IDOC) was ordered to produce Plaintiff's medical records (Dkt. 60); and Plaintiff filed several supplements (Dkt. 58 & 61.)

Having reviewed the record in this matter, including the parties' original and supplemental submissions, the Court finds that oral argument is unnecessary and enters the following Order granting the Motion for Summary Judgment.

---

[1] The true names of Defendants are Gerlyn Walker-Gibbs and Kelby Cornett.

**MEMORANDUM DECISION AND ORDER - 1**

# RECONSIDERATION OF MOTION FOR SUMMARY JUDGMENT

## 1. Remaining Medical Claims

Defendants Kingsland, Gibbs, and Cornett are non-medical jail staff. At the time of the incidents at issue, Plaintiff was a pretrial and post-conviction detainee at the Gooding County Jail, whose health problems included diabetes, obesity, hypertension, high blood pressure, bipolar disorder, personality disorder and schizophrenia. (Plaintiff's Motion and Submission of More Records for Judgment, Exhibits, Dkt. 61-1, pp. 1-2.)

When the Court reviewed Defendants' first Motion for Summary Judgment, several questions were unanswered by the record presented: (1) whether any Defendant had responsibility for seeing that Plaintiff received medical care after he filed a February 1, 2006 "kite" (medical request form) to talk with a doctor; (2) whether any Defendant had responsibility to see that Plaintiff received physical therapy upon his return from the hospital on January 31, 2006; and (3) whether any Defendant was responsible for failing to respond to Plaintiff's kite of July 11, 2006, complaining that he was told by jail doctors that he would not get help or rehabilitation in jail.

Subsequently, Defendants submitted the daily jail logs summarizing the interactions between jail staff and Plaintiff, as well as the interactions between medical providers and Plaintiff. Plaintiff submitted Affidavits of himself and several inmates who were at the Gooding County Jail during the time period in question, as well as prison medical records from the time period following his jail stay.

After reviewing the entire record, the Court concludes that Defendants have come

forward with sufficient admissible evidence to show that Plaintiff was receiving regular, adequate medical care at the jail, and that Plaintiff's complaints and conditions were not severe or obvious enough to cause a responsibility to arise in Defendants to independently provide additional or different care. In the face of Defendants' evidence, Plaintiff has not come forward with sufficient evidence to support a jury verdict in his favor, and thus summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.*, 4787 U.S. 242, 256-57 (1986).

The key consideration regarding Plaintiff's remaining claims is that the record contains insufficient evidence of deliberate indifference, which is a required element of an Eighth Amendment cruel and unusual punishment claim.[2] Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the

---

[2] Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, *Bell v. Wollfish*, 441 U.S. 520, 537 n. 16 (1979), the same standard applies in both circumstances. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the contention that mentally ill pretrial detainees are entitled to greater protection under the Fourteenth Amendment). "We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a 'deliberate indifference' standard." *Id*. at 1241.

**MEMORANDUM DECISION AND ORDER - 3**

Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). Generally, "prison officials are entitled to rely on the opinions, judgment, and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for an inmate." *Wynn v. Mundo*, 367 F.Supp. 2d 832, 837-38 (D. N.C. 2005).

### A. *February 2006 Medical Care*

In response to the Court's request for supplemental information, Defendants provided a chronology of Plaintiff's incarceration, called an "Inmate Information Sheet." The following chronology is from the Inmate Information Sheet, as well as from medical records and other items submitted by the parties:

| | |
|---|---|
| Jan. 30, 2006 | Hospital "Progress Notes" state: "Patient still has [reduced] balance and is high fall risk with/without walker. S/p Lieutenant Sam Gibbs about assist [sic] they can provide patient in jail and she stated patient can use walker and they will provide assist as patient needs to ensure safety. They can also follow through with exercise protocol and gait [illegible] goals given by PT. Will order walker and set exercise and gait goals for patient." (Exhibits to Plaintiff's Response, p. 33, Dkt. 51-3.) |
| Jan. 31, 2006 | "Interagency Patient Transfer Form" states: "Use walker"; "Patient is at risk for falls"; and "PT to evaluate and treat for ambulation." (Exhibit to Affidavit of Michael Kane, p. 27, Dkt. 49-8.) |
| Jan 31, 2006 | Plaintiff's hospital "Discharge Summary" states: "He is to use a walker when ambulating. He is to get physical therapy for ambulation. He is to follow up with the facility medical personnel for his medical care." (Response Exhibits, p. 32, Dkt. 51-3.) |
| Jan. 31, 2006 | Plaintiff returned to the jail from St. Alphonsus Hospital. Defendant Gerlyn Walker-Gibbs filed an Affidavit stating that Plaintiff was provided with a walker and moved to a part of the jail where he |

**MEMORANDUM DECISION AND ORDER - 4**

|               |                                                                                                      |
|---------------|------------------------------------------------------------------------------------------------------|
|               | could be closely monitored.                                                                          |
| Jan. 31, 2006 | Dr. Ian called to clarify Plaintiff's medications.                                                   |
| Feb. 1, 2006  | Plaintiff filed a kite requesting to speak to a doctor.                                              |
| Feb. 1 or 2, 2006 | Plaintiff was seen by Physician's Assistant Marcie Marrow, who notes that Plaintiff needs to go to the hospital for lab work. |
| Feb. 4, 2006  | Plaintiff fell in cell, and no medical care was sought or received for the fall[3].                   |
| Feb. 8, 2006  | Plaintiff returned to hospital for lab work.                                                         |
| Feb. 17, 2006 | Fifteen-minute watch lifted. (Exhibit A to Affidavit of Sheriff Shaun Gough, Exhibit A, Dkt. 56, pp. 6-9.) |

The Court earlier questioned whether any Defendant had responsibility for seeing that Plaintiff received medical care after he filed a February 1, 2006 "kite" (medical request form) to talk with a doctor and whether any Defendant had responsibility to see that Plaintiff received physical therapy upon his return from the hospital on January 31, 2006. On the same day, Deputy Quigley (not a defendant) responded that a doctor was scheduled to review Plaintiff's paperwork that day. (Gough Affidavit, Exhibit A, Dkt. 49-7.)

Plaintiff has provided supplemental factual information, but little of it is relevant to whether these particular Defendants failed to provide Plaintiff with adequate medical

---

[3] Plaintiff argues that the jail's records show that deputies are being untruthful about the events. The Inmate Information Sheet shows that Kimball helped Plaintiff up after he had fallen at 16:34, and the Special Watch Log written by Deputy France indicates that Plaintiff was up using the bathroom at 16:21 and lying on his bunk at 16:34, with no mention of a fall. (Dkt. 58-2, p. 3; Dkt. 58-3, p. 4.) These notes are not necessarily inconsistent given that they were written by different staff.

**MEMORANDUM DECISION AND ORDER - 5**

care and, in failing to act, was deliberately indifferent to the Plaintiff's medical needs.[4]

The same day Plaintiff returned to jail, his physician called with medication instructions. The same day Plaintiff's kite was filed, or, at the latest, the day after, Plaintiff saw Physician's Assistant Marcie Morrow. Plaintiff also returned to the hospital for further medical testing within a week.

As noted above, the hospital discharge records indicate that Defendant Gibbs would provide a walker and follow through with exercises and goals given by a physical therapist. Plaintiff asked to speak with a physician, and he was scheduled to see a physician's assistant almost immediately. Plaintiff was being followed by an outside physician, Dr. Ian, and he was taken back to the hospital for follow-up testing. The medical personnel treating Plaintiff chose not to prescribe physical therapy for Plaintiff. Addressing all of Plaintiff's allegations regarding these non-medical Defendants' potential liability for failure to provide adequate medical treatment, the Court finds that there is nothing in the record suggesting that a physician's visit was necessary, rather than a physician's assistant's visit, or that Defendants should have intervened in the medical treatment being provided to Plaintiff (such as insisting that physical therapy be prescribed) under the direction of Dr. Ian and Physician's Assistant Morrow as a result of Plaintiff's kite of February 1, 2006. Any of the medical professionals could have ordered

---

[4] Plaintiff states that jailors did not help him get out of bed, shower, wash his hair, or walk, or help him get up when he fell. However, he states that his cellmates helped him with these tasks.

**MEMORANDUM DECISION AND ORDER - 6**

physical therapy for Plaintiff, but none did.

Plaintiff argues that jail records show that Gibbs was in charge of scheduling medical appointments. (Plaintiff's Supplemental Response, Dkt. 58-3, p. 5.) However, the records clearly show that the scheduling was done as directed by the physician's assistant. (Id.) Nothing in the record shows that non-medical jail staff scheduled medical appointments without the direction of medical staff, and nothing in the law requires them to do so, absent obvious, emergent circumstances.

The Court has reviewed other cases where non-medical jail staff have been held liable for not providing additional medical treatment above and beyond that provided by medical staff. The fact patterns of those cases are unlike this one. The other cases involve circumstances where the medical need is both serious and obvious. *See Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990) (prison workers ignored a known risk of harm to an inmate with a heart condition, which resulted in death of the inmate); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987) (failure to treat a gunshot wound was deliberately indifferent); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (failure to treat an obviously broken arm was deliberately indifferent).

Here, Plaintiff argues that "this court can ask any doctor about how I needed help." (Dkt. 58-2, p. 4.) However, the issue here is whether Plaintiff's alleged need for physical therapy (or other medical care that was different from that being provided) was so obvious to Defendants that they should have done something more in the face of Plaintiff being treated by a physician's assistant, being monitored by physician, and being tested

**MEMORANDUM DECISION AND ORDER - 7**

by a hospital. The record does not support Plaintiff's position that Defendants were deliberately indifferent to a serious medical need of Plaintiff for the time period between January 31, 2006, and February 17, 2006.

Finally, while Plaintiff has brought forward a variety of more recent medical records and affidavits, none provides a causal link between Defendants' failure to provide physical therapy and Plaintiff's lack of mobility. Plaintiff has been given access to all of his medical records, and he has been unable to point to any medical opinion or record showing a cause for his lack of mobility. As a result, Plaintiff has not shown that he can meet the "causation" element of his cause of action. Mere chronology of events does not prove causation.

### B. *February 17, 2006 through August 10, 2006*

The next period of time at issue is February 17, 2006, through August 10, 2006. The Court questioned whether any Defendant was responsible for failing to respond to Plaintiff's kite of July 11, 2006, complaining that he was told by jail doctors that he would not get help or rehabilitation in jail.

Events during that time period include the following:

| | |
|---|---|
| Feb. 17, 2006 | Fifteen-minute watch lifted. |
| Feb 20, 2006 | Deputy Boyer reported to Kingsland that Plaintiff was acting paranoid and convinced that Deputy Cornett was trying to kill him. Plaintiff removed one of the legs of his walker and stated that he needed it for his own protection. (Gooding County Incident Report of 2-20-06, Dkt. 24-2, p. 24-25). |

| | |
|---|---|
| Feb. 20, 2006 | Deputy Kingsland removed Plaintiff's walker from his cell.[5] |
| Feb. 22, 2006 | Plaintiff fell and hit his head. |
| Feb. 22, 3006 | Plaintiff had a doctor visit. He was prescribed Ibuprofen every six hours as needed. He was also give an anxiety medication. |
| Mar. 15, 2006 | Plaintiff was being provided with 800 mg. of Ibuprofen every 8 hours for pain, as well as other medications. |
| Mar. 30, 2006 | Dr. Ian gave instructions that Plaintiff was to give a urine sample that day or the next day. |
| Apr. 9, 2006 | Plaintiff was transported to hospital. |
| Apr. 9, 2006 | Plaintiff returned to the jail from the hospital, all labs OK, prescribed phenazopyridine for pain, 3 times a day for 2 days. |
| Apr. 26, 2006 | Plaintiff saw PA Morrow, and changes in medication were made. |
| Apr. 27, 2006 | Plaintiff was prescribed Ibuprofen. |
| Apr. 27, 2006 | Plaintiff was taken to Dr. Smith's office. |
| May 5, 2006 | PA Morrow gives instructions for Plaintiff to be taken to the hospital to have his Depakote levels checked on the first of each month. |
| May 8, 2006 | Plaintiff went to hospital to have his Depakote levels checked. |
| May12, 2005 | Plaintiff was released to the mental hospital. |
| May 31, 2006 | Plaintiff was returned to the jail from the mental hospital. |

---

[5] A jail note of February 16, 2006 indicates that "Baldry" informed officers that Plaintiff was "walking around fine when [officers] were not around, but as soon as he hears [them] coming, he starts acting like he is having problems." (Dkt. 56, p. 8.) Plaintiff's witness, Chaun McClellan, declared that "Mr. Kingsland took [Plaintiff's] walker away and told him to suck it up and stop milking his conditions." (Dkt. 58-1, p. 3.) Regardless of what Kingsland said when he took the walker away, McClellan does not refute the reports from other officers that Plaintiff had dismantled the walker to use as a weapon.

**MEMORANDUM DECISION AND ORDER - 9**

| | |
|---|---|
| June 14, 2006 | Plaintiff was transported to and from mental hospital. |
| June 17, 2006 | Health evaluation was completed. Plaintiff was complaining of not sleeping, right arm and shoulder pain. and chest pains. He was told to fill out a kite to see a doctor. |
| June 22, 2006 | Plaintiff has doctor visit for right shoulder. Advised by doctor that he needed an orthopedic evaluation, but it was not urgent. Jail note–waiting until Plaintiff's disposition [sentencing and transfer] is clear. |
| July 11, 2006 | Plaintiff filed a kite or grievance, which stated: "I need surgery from injury in jail told by jail doctors that would not get help or rehab in jail." |
| July 27, 2006 | Plaintiff saw doctor, doctor ordered x-ray, and doctor was to call and schedule and let jail staff know. |
| Aug. 2, 2006 | Plaintiff received TB shot and follow up. |
| Aug 3, 2006 | Note regarding Dr. Ian's request for Plaintiff to go to hospital for x-rays prior to his doctor's appointment on August 18th. Note that Plaintiff will most likely be transported to the hospital on the 7th. |
| Aug 10 | Plaintiff was transferred to custody of IDOC. |

The foregoing record shows that Plaintiff received regular medical and mental health treatment while housed at the jail. He requested a doctor's visit for his shoulder on or about June 17, 2006, and he was seen by the doctor on June 22, 2006. The doctor determined that Plaintiff needed further, but not an immediate, orthopedic evaluation. Defendants have supplemented their filing to assert that they did not respond to Plaintiff's July 11, 2006, grievance contesting the doctor's opinion because they relied on the doctor's opinion that Plaintiff had no emergent or urgent medical needs and Plaintiff was going to be transferred to IDOC shortly. Even though there was no written response, it is

**MEMORANDUM DECISION AND ORDER - 10**

clear from the record that Plaintiff saw the doctor again on July 27, 2006, at which time x-rays were ordered. Jail staff had until August 17 to take Plaintiff in for x-rays, but Plaintiff was sentenced and transferred to the IDOC on August 10, 2006.

Plaintiff has provided insufficient rebuttal evidence that (1) other medical care was necessary before his transfer date of August 10, 2006; (2) that Defendants should have obtained the x-rays sooner than August 17 (their deadline was "before the doctor's visit of August 18"); and (3) that these non-medical Defendants should have done something more or different rather than relying on the doctor's opinions noted in the record. Based on all of the foregoing, non-medical Defendants Kingsland, Gibbs, and Cornett are entitled to summary judgment on Plaintiff's Eighth Amendment medical deliberate indifference claims.

## 2. Claims Against Gooding County

According to the Court's prior Orders, Plaintiff was not permitted to proceed against Gooding County because of his failure to state a claim upon which relief can be granted. He has failed to file an amendment to cure this deficiency. (See Orders at Dkt. 5 & 7.) As a result, the claims against Gooding County will be dismissed with prejudice.

# ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 55) is GRANTED.

2. Plaintiff's Motion for Judgment Submission of More Records for Judgment (Dkt. 61) is GRANTED to the extent that the Court has considered the records in determining whether summary judgment for Defendants should be granted.

3. Plaintiff's claims against Gooding County are DISMISSED with prejudice.

4. Plaintiff's Amended Complaint (Dkt. 6) and this entire case are DISMISSED with prejudice.

DATED: **August 2, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge